

**U.S. Department of Justice**

*United States Attorney*
*District of Massachusetts*

*Main Reception: (617) 748-3100*

*United States Courthouse, Suite 9200*
*1 Courthouse Way*
*Boston, Massachusetts 02210*

March 15, 2004

**BY HAND**

Tracy Miner
Mintz Levin et al
One Financial Center
Boston, MA 02111

Re: United States v. Angel Luis Rivera
Criminal No. 04-10053-RCL

Dear Ms. Miner:

Pursuant to Rule 116.1 of the Local Rules of the United States District Court for the District of Massachusetts, the government hereby provides you with the following automatic discovery in the above-referenced case:

A. Rule 16 Materials

1. Statements of Defendant under Rule 16(a)(1)(A)

a. Written Statements

There are no relevant written statements of the defendant Angel Rivera, a/k/a "King Venom" (hereinafter referred to as "the defendant") in the possession, custody, or control of the government.

b. Recorded Statements

Consensual tape-recordings were made of personal meetings and telephone conversations involving the defendants in this case

and two cooperating witnesses ("CW-2" and "CW-3")[1] as is indicated in the index attached as Exhibit 1. All audio and video tapes are available for your review and a copy of them is being prepared and will be forwarded to The Duplicating Center, 42 Chauncy Street, Suite 3A, Boston, MA 02111, telephone number 617-728-0000. In the event your client is detained pending trial, a copy of the audiotapes will also be sent to the institution at which the defendant is being held in accordance with LR 116.4.

To date, draft transcripts of these tapes have not been prepared. However, summaries of some of the recorded conversations have been prepared as part of Bates Number documents previously been provided to you.

c. Grand Jury Testimony of the defendant

The defendant did not testify before the grand jury. Nor am I aware of any other statements made by him to law enforcement agents other than answers to the standard booking questions that would have been posed to him after his arrest or as may be referenced in the reports produced in this action. If I become aware of any such additional statements, I will advise you at once.

d. Oral Statements to then Known Government Agents

Other than booking statements referenced in the preceding paragraph and other statements that are referenced in the reports produced in this matter (including the reports pertaining to the post arrest statements of Onyx Figueroa), I am presently unaware of any oral statements made by the defendant before or after arrest, in response to interrogation by a person then known by the defendant to be a government agent, which the government intends to use at trial. If I become aware of any further such statements, I will advise you at once.

2. Defendant's Prior Record under Rule 16(a)(1)(B)

I understand that you received a copy of prior criminal record of the defendant from Pretrial Services. Please contact me if you need a duplicate copy.

---

[1] The crack cocaine purchases described in Counts 2-5 of the indictment were made by CW-3 (who on one occasion was accompanied by a State Police undercover agent). The heroin purchases described in Counts 7-11 were all made by CW-2.

3. Documents and Tangible Objects under Rule 16(a)(1)(C)

All books, papers, documents and tangible items that the are within the possession, custody, and control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial of this matter, or were obtained from or belong to the defendant may be examined by contacting the undersigned Assistant United States Attorney and making an appointment to view the same at a mutually convenient time.

4. Reports of Examinations and Tests under Rule 16(a)(1)(D)

Copies of the DEA-7 laboratory reports received to date relating to the drugs purchased from the defendants in this case have been produced. Any additional laboratory reports received after the date of this letter will be forwarded to you.

Should we be unable to reach a stipulation as to the results of the examination of the drugs seized in this case, the government plans to offer expert testimony concerning the results of the laboratory analysis of the drug exhibits by the chemists who analyzed the samples and determined that they were specified amounts of cocaine base or heroin. In addition, the government expects to offer testimony from the case agent or another qualified law enforcement agent who has inspected those drug exhibits the government alleges to be cocaine base and who will testify that, based on the appearance, texture, color and odor of those exhibits, they are the particular form of cocaine base known as "crack cocaine." The basis for this expert testimony is more fully set forth in the grand jury testimony of Special Agent Mark Karangekis produced in this matter. Your client is not charged in the crack cocaine transactions.

B. Search Materials under Local Rule 116.1(C)(1)(b)

Searches were conducted of property belonging to one of the defendants in this case located at 5 Washington way, Lawrence, MA. Copies of the search warrant, application and supporting affidavit for this search are included as part of Bates Numbered documents 1090-1172 attached hereto as Exhibit 2. The returns for this search warrant (and reports describing the search) are being prepared and will be provided to you.

Any items seized from the defendant at the time of his arrest may be examined by appointment in accordance with paragraph 3, above and a copy of any agency reports describing any inventory search will be provided to you upon receipt by this office.









F. Identifications under Local Rule 116.1(C)(1)(f)

There were several kinds of identification procedures used in the course of this investigation by witnesses who the government anticipates calling as witnesses in its case-in-chief. In addition to traditional photographic arrays and identifications made by surveillance agents who were personally familiar with targets of the investigation, agents working on the investigation frequently reviewed videos of controlled purchases and compared the image of the individual on the video to booking or other photographs of suspected targets. All such procedures of which I am aware are described in the police reports previously produced. All videos taken in this case will be made available in accordance with the procedures described in this letter.

Except as may be indicated in the documents produced to date, I have no information indicating that the defendant was the subject of an investigative identification procedure used with a

Search warrant materials concerning other searches in this investigation of property located at 19 5th Street Second Floor Lowell, Massachusetts and 750 Merrimack Street, #3, Lowell, Massachusetts cases are also included as Bates Numbered Documents 1090-1172. Returns for any other searches (and reports describing the searches) will be produced.

Except as described herein, the government is not in possession of reports related to the seizures of evidence in this case that it presently anticipates offering in its case-in-chief beyond those items otherwise described in this letter.

C. Electronic Surveillance under Local Rule 116.1(C)(1)(c)

No oral, wire or electronic communications of your client were intercepted by the government in connection with this case pursuant to 18 U.S.C. §§ 2510-2518.

D. Consensual Interceptions under Local Rule 116.1(C)(1)(d)

As discussed above, this case involved the use of consensual monitored meetings and conversations that were recorded. Although summaries of some conversations have been prepared (and, as is indicated above, have been produced), no formal transcripts of these tapes (either draft or final) are presently available. Any such transcripts that are prepared will be made available to you in accordance with Local Rule 116.4(B). Although not required by Local Rule 116.1(C)(1)(d)(i), the government has also produced the FBI-302 and other reports relating to these consensual recordings and other contacts with the defendant concerning the offenses described in the Indictment. These reports were also included in the documents previously produced and identified as Bates Number documents 1-1028.

E. Unindicted Coconspirators under Local Rule 116.1(C)(1)(e)

REDACTED

witness the government anticipates calling in its case-in-chief involving a line-up, show-up, photo-spread or other display of an image of the defendant. In the event I become aware that such a procedure was used, I will advise you at that time and will provide you with copies of any tangible evidence reflecting, used in or memorializing the identification procedures.

G. Exculpatory Evidence under Local Rule 116.2

With respect to the government's obligation under Local Rule 116.2(B)(1) to produce "exculpatory evidence" as that term is defined in Local Rule 116.2(A), the government states as follows:

1. The government is aware of no evidence that would tend directly to negate the defendants' guilt concerning any count in the Indictment.

2. The government is aware of no information that would cast doubt on the admissibility of evidence that the government anticipates offering as part of its case-in-chief and that could be subject to a motion to suppress or exclude.

3. The heroin purchases made from the defendants in this case were made by CW-2. The crack cocaine purchases made from the defendants were made by CW-3. Other than CW-2 and CW-3, no promises, rewards, or inducements have been given to any witness whom the government presently anticipates calling as part of its case-in-chief.

Prior to the date of this letter, CW-2 received $15,500 and CW-3 received $1200 from the FBI in connection with their involvement in this investigation. CW-3 also had previously received $3900 in connection with work performed on unrelated investigations. These totals includes payments for expenses, including relocation expenses necessitated to ensure one or more of the CW's safety.

(A) **CW-2.** In addition to these payments, additional rewards, payments, and inducements were given to CW-2 in connection with a controlled drug purchase made earlier in this investigation by another cooperating witness. After this purchase was made, CW-2 was advised of the purchase and told that he/she would not be immediately charged if he/she was willing to cooperate in this investigation and the fact and extent of that cooperation would be brought to the attention of the United States Attorney. Agents also assisted CW-2 in clearing an outstanding arrest warrant issued in a drug case in state court in order to facilitate his/her cooperation and then brought the

fact of that cooperation to the district attorney who allowed CW-2 to plead guilty and recommended a sentence of probation which was accepted by the state district court judge. Agents also assisted CW-2 in having his/her driving privileges restored/maintained. CW-2 and CW-3 have also been advised that agents will provide them further assistance as needed to protect them and their families from retaliation.

(B) **CW-3.** CW-3 first began to cooperate with law enforcement authorities in 1998 after he/she was stopped while driving with a suspended license and while waiting to purchases drugs. In addition to the payments previously described in this and other investigations, CW-3 has received certain other promises, rewards, and inducements from law enforcement personnel between 1998 and 2001 all in connection with other unrelated work prior to his/her work in this case.

CW-3 first began to cooperate after being stopped while driving with a suspended license. He/she was not charged with that offense. Law enforcement authorities also contacted the Essex County District Attorney's office on CW-3's behalf and helped negotiate the amount of his/her repayment to welfare authorities. Law enforcement authorities also interceded on CW-3's behalf on two other occasions prior to CW-3's work in this investigation. The first was after CW-3 had been stopped for speeding by the Massachusetts State Police (which resulted in CW-3 not being ticketed). The second was with New Hampshire authorities after CW-3 was charged with driving with a suspended license. These charges were dropped after CW-3 paid $550 in fines for speeding. This money was given to him/her by the FBI.

Pursuant to Local Rule 116.6(A), the government declines to disclose at this time the identity of CW-2 and CW-3. The government believes that such a disclosure would be detrimental to the interests of justice. The government takes the position that the exposure of the identity of CW-2 or CW-3 would put their safety in jeopardy. The government is prepared to identify CW-2 and CW-3 at a reasonable time before trial.

4. Other than the CW-2 and CW-3, the government is unaware that any of its presently anticipated case-in chief-witnesses has any criminal record or criminal cases pending. A redacted copy of the criminal record of CW-2 and CW-3 is attached as Exhibit 3. This will also be updated and any additional information will be forwarded.

5. No named percipient witness failed to make a positive identification with respect to the crimes described in the

indictment.

H. Other Matters

The government recognizes that its duty of disclosure and discovery as set forth in Local Rule 116 and Rule 16 of the Federal Rules of Criminal Procedure is a continuing one. In addition, please consider this letter to be a request for reciprocal discovery pursuant to Local Rule 116.1(D) and Fed. R. Crim. P. 16(b). I request that you provide a written response to my request for reciprocal discovery within 10 days of receipt of this letter.

I. Request for Alibi Information

According to the government's evidence, meetings and/or conversations took place with the defendants in this case on the following dates and times:

| **Date** | **Time (apprx)** | **Location** | **Participating def's.** |
|---|---|---|---|
| 1/14/03 | 9:00p.m. | 5 Washington Way Lawrence | Arroyo |
| 1/15/03 | 6:20p.m. | 5 Washington Way Lawrence | Arroyo |
| 1/15/03 | 6:54p.m. | 1 Tremont Street Lawrence | Arroyo |
| 1/15/03 | 7:30p.m. | 5 Washington Way Lawrence | Arroyo |
| 1/29/03 | 8:15p.m. | Market Street Projects (Near 5 Washington Way) Lawrence | Arroyo |
| 2/1/03 | 5:33p.m. | Market Street Projects (Near 5 Washington Way) Lawrence | Arroyo |
| 2/1/03 | 7:42p.m. | Market Street Projects (Near 5 Washington Way) Lawrence | Arroyo |
| 2/4/03 | 7:35p.m. | Market Street Projects (Near 5 Washington Way) Lawrence | Arroyo |

| | | | |
|---|---|---|---|
| 2/4/03 | 7:55p.m. | Market Street to South Union St. to Springfield St. to Foster St. Lawrence | Arroyo Figueroa |
| 2/11/03 | 10:15p.m. | Market Street Projects (Near 5 Washington Way) Lawrence | Arroyo |
| 12/17/03 | 5:50p.m. | 38 Border Street Lawrence | Rivera |
| 12/26/03 | 7:35p.m. | Market Street Projects (Near 5 Washington Way) Lawrence | Arroyo Rivera |
| 12/29/03 | 1:04p.m. | 38 Border St. Lawrence | Rivera |
| 12/29/03 | 1:10p.m. | Market Street Projects (Near 5 Washington Way) Lawrence | Arroyo Rivera |
| 1/2/04 | 2:35p.m. | 38 Border St. Lawrence | Rivera Arroyo |
| 1/16/04 | 10:00p.m. | Market Street Projects (Near 5 Washington Way) Lawrence | Arroyo |
| 1/19/04 | 9:15p.m. | Market Street Projects (Near 5 Washington Way) Lawrence | Arroyo |
| 2/7/04 | 5:55p.m. | Market Street Projects (Near 5 Washington Way) Lawrence | Arroyo |

Pursuant to Fed. R. Crim. P. 12.1, the government hereby requests notice of any intention to offer an alibi defense to the charged offenses or any of the above-captioned meetings or conversations.

If you have any questions about any of this information or

wish to discuss this case, please call us at (617) 748-3100.

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

By: ______________________
JOHN A. WORTMANN, JR.
~~PETER K. LEVITT~~
Assistant U.S. Attorneys

enclosures

cc: Tom Quinn, Courtroom Clerk to
U.S. Magistrate Judge Judith Dein
(with information regarding co-conspirators redacted)